NOT DESIGNATED FOR PUBLICATION

No. 111,934

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
EDWARD C. JOHNSON

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE BROWN, judge. Opinion filed March 17, 2017.
Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen*, of Wichita, for appellant.

*Dwight R. Carswell*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*: In 2001, a jury found Edward C. Johnson to be a sexually violent predator (SVP), and the district court committed him to the custody of the Secretary of Social and Rehabilitation Services (SRS). In 2013, the court denied Johnson's most recent petition for discharge without a probable cause hearing. Johnson appealed the court's ruling. He then filed a motion for remand to the court to hold a hearing to determine if his attorney had provided ineffective assistance of counsel for not including his most recent independent evaluation with the petition. On remand, the court found that Johnson's attorney did not provide ineffective assistance of counsel. Johnson appeals that ruling. We affirm.

In 1997, Johnson was convicted of sexual exploitation of a child in Wichita and sentenced to prison. He also had a prior conviction for a sexual offense in Minnesota from 1991. In 2001, shortly before his release, the State filed a petition alleging Johnson

1

was an SVP under the Kansas Sexually Violent Predator Act (KSVPA). At jury trial, two experts testified that had diagnosed Johnson with paraphilia, hebephilia, pedophilia, bipolar disorder, and antisocial personality disorder with narcissistic traits, and they testified that these diagnoses predisposed Johnson to commit sexual crimes. A third expert testified that Johnson had bipolar disorder but that he was not a pedophile. A jury found Johnson to be an SVP, and the district court committed him to the custody of the Secretary of SRS in June 2001.

In 2003, Johnson filed a pro se petition for discharge and seeking a probable cause hearing on whether he should be discharged from commitment. The court appointed Mark Sevart to represent Johnson and granted Johnson's request for an independent evaluation by Dr. Robert Barnett. After reviewing the results of the independent evaluation, the court found there was no probable cause for an evidentiary hearing and denied Johnson's petition.

In 2006, Johnson filed another pro se petition for discharge and a probable cause hearing. The court appointed Chris Garcia to represent Johnson. The court also granted Johnson's request for an independent evaluation. In 2007, the court denied Johnson's petitions after a hearing.

In 2008, Johnson filed another pro se petition for discharge and a probable cause hearing. The court denied the petition based on its finding at Johnson's 2008 annual review that Johnson should remain in custody.

In 2009, Johnson filed another pro se petition for discharge and a probable cause hearing. The court granted Johnson's petition for a probable cause hearing. The district court appointed Terry Beall to represent Johnson and granted Johnson's motion for an independent evaluation.

In 2010, Johnson filed another motion for a probable cause hearing and an independent evaluation. The court notified Beall of Johnson's pro se motions. The court also ordered another independent evaluation.

The hearing on the prior two motions for probable cause was continued until February 2012. The court ordered Dr. Stanley Mintz to perform an independent evaluation. Dr. Mintz completed his evaluation on February 5, 2012. The court held a hearing on February 10, 2012, and denied Johnson's petition for discharge.

In 2012, Johnson filed another pro se petition for discharge, conditional release, or transitional release. The district court again appointed Beall to represent Johnson and appointed Dr. Mintz to perform an independent evaluation. Dr. Mintz completed his evaluation on March 11, 2013.

In October 2013, the State filed a motion to dismiss Johnson's petition for transitional release. In its motion, the State noted Johnson had already petitioned for transitional release in 2007 and 2009. In both cases, the district court found Johnson was not so changed that he was safe to be at large. The State argued Johnson's most recent petition did not state any actual facts upon which the court could determine he had so changed he was safe to be at large. Furthermore, it asserted Johnson's petition failed to allege any change in his condition since the court denied his last motion.

In December 2013, the district court held a hearing on the State's motion to dismiss. The same judge who presided over the hearing on Johnson's 2009-2010 petition, Judge Kisner, presided over the hearing. It is a good practice, where practicable, to have the same judge preside at these hearings. At the hearing, Beall requested leave to file an amended petition. The court granted Beall leave to amend.

3

On January 21, 2014, Beall filed an amended petition on behalf of Johnson. The amended petition stated:

- Johnson had been in the Sexual Predator Treatment Program (SPTP) for 12 years and had completed all education and treatment modules presented to him over that period;
- He had been in the Intensive Treatment Unit (ITU) for 4 years and it had impeded his progress because the ITU was overly restrictive and punitive;
- The statements in his 2010 yearly report indicated he could control his impulses to a degree that he was unlikely to ever reoffend;
- He had been in phase 3 of SPTP since October 2011 but had made progress as indicated in reports from 2012;
- His inability to move on from phase 3 was due to the subjective nature of the program and not his lack of progress;
- Annual reports did not accurately reflect the amount of progress he had actually made because the staff was unwilling to change the program to aid his progress;
- Dr. Mintz' 2013 evaluation indicated Johnson had internalized more of the program than he exhibited, thus affirming the previous statements;
- He had a loss of libido; and
- Dr. Mintz' 2013 evaluation indicated Johnson had made progress in all areas over the past 4 years but had made the most progress in the past 12 months.

The district court held another hearing on February 21, 2014, to determine whether to grant the State's motion to dismiss. Judge Kisner again presided. In his argument before the court, Beall mentioned Dr. Mintz' 2013 report, stating that while Dr. Mintz' new evaluation was not before the court, he was relying on it in order to support the petition. Beall noted Dr. Mintz' newest evaluation stated Johnson had progressed and had internalized a lot of information the program provided.

4

The district court denied Johnson's petition, finding it did not present facts sufficient to demonstrate Johnson had so changed that another hearing was warranted, citing K.S.A. 2016 Supp. 59-29a11(a). Johnson appealed the ruling. He then filed a motion for remand to the district court for an evidentiary hearing on whether Beall had provided ineffective assistance of counsel. The Kansas Court of Appeals granted the motion, consistent with the ruling in *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986).

At the *Van Cleave* hearing, Beall testified he originally represented Johnson regarding Johnson's 2009-2011 petition for discharge. The district court later reappointed him to represent Johnson after Johnson filed a pro se petition in 2012. Beall stated he requested an expert evaluation, and the court granted the request. Dr. Mintz, who had performed Johnson's 2012 evaluation, performed another evaluation in 2013.

Beall said he received and reviewed the 2013 evaluation prior to filing the amended petition. He understood both the 2012 and the 2013 evaluation to be recommending transitional release. Beall prepared an amended petition, which he then sent to Johnson. According to Beall, he discussed the petition with Johnson and then Johnson sent back his own version of the amended petition which Johnson had signed. Beall did not redo the petition because he believed the petition had to be signed by Johnson. Beall then filed that petition.

Beall testified that under statute, petitions for transitional release were reviewed by the district court to determine if the petitions were frivolous. If the court determined the petition was frivolous, then the court should deny it. According to Beall, upon filing a second or subsequent petition, the petitioner had to initially overcome a presumption of frivolousness. Beall added that the State had not filed a motion to dismiss prior to the

2012 probable cause hearing, thus, he did not have to argue before the district court that Johnson's 2009-2011 petition was not frivolous.

Beall told the court he made a conscious decision not to attach Dr. Mintz' 2013 report to the amended petition, although he had attached such evaluations in other SVP cases when he considered it advantageous. In this case, he did not attach the report because he felt the new evaluation reiterated the prior evaluation and did not have "a lot more specific information that [he] thought would be helpful." Beall believed it would be more beneficial in this case to only include new information from the evaluation that was helpful to Johnson's case. Otherwise, he reasoned, the State would simply argue the 2013 evaluation was essentially the same as the 2012 evaluation.

In its order, the district court found Beall had not provided ineffective assistance of counsel. The court found that Beall had not performed deficiently, noting Beall had included favorable information from Dr. Mintz' 2013 report in the amended petition, and Beall discussed Dr. Mintz' report at the hearing on the petition. The court also found that Johnson had failed to establish prejudice.

Johnson filed a motion to alter or amend judgment. He argued the district court overstated his burden of proof when it cited to two federal cases, *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) and *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013), *cert. denied* 135 S. Ct. 159 (2014). He also contended Beall actively argued against consideration of Dr. Mintz' report at the hearing, and the report would have been enough to establish probable cause under applicable law.

The district court denied Johnson's motion to alter or amend judgment. The court found that there was no Kansas caselaw which disapproved of the holdings in *Boyd* and *Gissendaner*. Furthermore, the court held that even applying only the *Strickland* standard, Beall provided adequate representation. Johnson appeals.

6

Johnson argues the district court erred in finding Beall was not ineffective. He first argues the district court used the wrong legal standard in making its ruling regarding his ineffective assistance claim. He also contends the 2012 and 2013 evaluations were dramatically different, and the 2013 evaluation would have established probable cause that his condition had so changed that he was safe for release. Johnson asserts Beall also argued against his interests at the hearing on the petition for transitional release.

The State argues Beall was not ineffective, and the district court was correct to find so. It argues the federal cases the district court cited were accurate statements of the law. It asserts Beall made a reasonable strategic decision not to include Dr. Mintz' 2013 evaluation in Johnson's petition. Finally, it contends Beall's decision did not prejudice Johnson. Because the 2012 and 2013 evaluations were so similar, the district court likely would have reached the same result even if Beall had attached the 2013 evaluation to the petition.

*Standard of review*

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, the appellate courts determine whether substantial competent evidence supports the district court's findings and whether the factual findings support the court's legal conclusions. The appellate courts apply a de novo standard to the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the outcome would have been different absent the deficient performance. *Sola-Morales v.*

7

*State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014), relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see also *In re Ontiberos*, 295 Kan. 10, 287 P.3d 855 (2012) (holding *Strickland* standard applies to ineffective assistance claims in the context of KSVPA proceedings). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

*Wrong standard*

Johnson argues the district court applied the wrong legal standard in reaching its holding regarding ineffective assistance of counsel. The court cited two federal cases in its original ruling. It cited *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999), for the proposition that for counsel's performance to be constitutionally ineffective, "it must have been completely unreasonable, not merely wrong." The court also cited *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013), *cert. denied* 135 S. Ct. 159 (2014), for the proposition that the movant "bears the heavy burden of showing that no competent counsel would have taken the action that his counsel did take." Johnson claims these cases overstate his burden of proof and are not accurate statements of Kansas law.

We do not need to address this claim. In its order on Johnson's motion to alter or amend judgment, the district court held that even setting aside the holdings in *Boyd* and *Gissendaner* and only analyzing Johnson's ineffective assistance claim under the *Strickland* test, the court came to the same finding as its previous ruling. That said, the Kansas Court of Appeals has quoted the same language from *Boyd* in a recent unpublished opinion. See *State v. Coryell*, No. 110,542, 2016 WL 757568, at *28 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* March 9, 2016. Also, while no Kansas case has cited *Gissendaner*, another Kansas Court of Appeals case used similar

8

language. See *Wilson v. State*, 51 Kan. App. 2d 1, 15, 340 P.3d 1213 (2014) ("If no competent attorney would have adopted the strategy, it falls below minimum constitutional standards.").

*SVP proceedings*

The KSVPA governs Johnson's case. The Kansas Legislature enacted the KSVPA to provide for the long-term control, care, and treatment of sexually violent predators. K.S.A. 59-29a01. Once a court or jury determines a person is a sexually violent predator, he or she is committed to the custody of the Secretary of SRS "until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large." K.S.A. 2013 Supp. 59-29a07. "The SPTP is comprised of seven treatment phases that must be completed by a committed person who has been placed in SRS custody. The first five phases involve inpatient treatment at Larned State Hospital, while phase six involves placement in a transition house located at Osawatomie State Hospital." *In re Twilleger*, 46 Kan. App. 2d 302, 308, 263 P.3d 199 (2011). In phase seven of the SPTP, which is known as transitional release,

> "a committed person remains in SRS custody but lives independently in preparation for his or her successful return to the community and court-monitored conditional release. If a committed person successfully completes all seven phases of the SPTP, he or she may be placed by the district court on conditional release. At that point, the person will no longer be in SRS custody. K.S.A. 59-29a19(a). After a minimum of 5 years of violation-free placement on conditional release, the committed person may be finally discharged from civil commitment by the district court pursuant to the terms of K.S.A. 59-29a19(b)." *In re Twilleger*, 46 Kan. App. 2d at 308.

The SVPA provides three ways for a committed person to move into transitional release or phase seven of the SPTP. See 46 Kan. App. 2d at 308. First, a sexually violent predator is entitled to a yearly review of his or her mental condition. K.S.A. 2013 Supp.

9

59-29a08(a). If, at the annual review hearing, the district court finds there is probable cause "to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release," the court must hold a second hearing or trial at which the State has the burden to prove beyond a reasonable doubt that placement of the committed person into transitional release is not appropriate. K.S.A. 2013 Supp. 59-29a08(c). Second, if the Secretary of SRS (now the Kansas Department for Aging and Disability Services) finds that the committed person is a candidate for transitional release, it may authorize the person to petition the district court for placement pursuant to K.S.A. 59-29a10(a).

The third way a committed person may move into transitional release is he or she can petition the district court without the Secretary's approval pursuant to K.S.A. 2013 Supp. 59-29a11(a). In order to succeed on such a petition, the petitioner must also demonstrate probable cause, which our Supreme Court has defined as "when viewed in the light most favorable to [the petitioner], the facts presented at the hearing were sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that [his or her] mental abnormality or personality disorder had so changed that [he or she] was safe to be placed in transitional release." *In re Burch*, 296 Kan. 215, 226, 291 P.3d 78 (2012).

If, however, "a committed person has previously filed a petition for release or discharge without SRS's approval, and relief has been denied on that petition, subsequent petitions from that person are subject to summary denial under K.S.A. 59-29a11(a)." *In re Miles*, 42 Kan. App. 2d 471, 475, 213 P.3d 1077 (2009). A prior unsuccessful petition will reduce "many of the rights of the committed person to a summary review, with a statutory mandate for the court to 'endeavor whenever possible' to determine whether a subsequent petition is frivolous and deny a hearing." 42 Kan. App. 2d at 475. K.S.A. 2013 Supp. 59-29a11(a) states:

"Nothing in this act shall prohibit a person from filing a petition for transitional release, conditional release or final discharge pursuant to this act. However, if a person has previously filed a petition for transitional release, conditional release or final discharge without the secretary of the department of social and rehabilitation services approval and the court determined either upon review of the petition or following a hearing, that the petitioner's petition was frivolous or that the petitioner's condition had not so changed that the person was safe to be at large, then the court shall deny the subsequent petition, unless the petition contains facts upon which a court could find the condition of the petitioner had so changed that a hearing was warranted. Upon receipt of a first or subsequent petition from committed persons without the secretary's approval, the court shall endeavor whenever possible to review the petition and determine if the petition is based upon frivolous grounds and if so shall deny the petition without a hearing."

In the present case, Johnson had already filed multiple petitions for discharge or transitional release over the Secretary's objection. The district court denied all of those petitions. Thus, Johnson's petition in the instant case would have been subject to the provisions for summary denial under K.S.A. 2013 Supp. 59-29a11(a).

*Strategic decision*

Johnson notes that Beall "made a conscious, strategic decision" not to include Dr. Mintz' 2013 report with the amended petition. If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. Strategic decisions made after a less than comprehensive investigation are reasonable exactly to the extent a reasonable professional judgment supports the limitations on the investigation. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (citing *Strickland*, 466 U.S. at 690-91).

Johnson premises his ineffective assistance claim on his contention that Dr. Mintz' 2012 and 2013 evaluations were "dramatically different." According to Johnson, the 2012

11

evaluation was clearly legally deficient under the standard for probable cause identified in *Burch*. The 2013 evaluation, however, was clearly legally sufficient. Therefore, Beall was deficient for not including the 2013 evaluation in Johnson's petition.

In support of his argument, Johnson attempts to magnify any differences in the record by selectively highlighting parts of the evaluations in his brief. For example, while he takes effort to emphasize that Dr. Mintz noted he was not a pedophile and not dangerous in the 2013 evaluation, he fails to include that Dr. Mintz made the same findings in his 2012 evaluation. When viewed as a whole, however, the reports are substantially similar.

In the 2012 evaluation, Dr. Mintz diagnosed Johnson with "Bipolar Disorder Without Psychotic Features," "Adult Attention Deficit Disorder," "Cannabis Abuse," "Paraphelia, NOS," and "Personality Disorder, NOS." He noted that Johnson "has made progress in terms of dealing with his mental illness symptoms." He stated Johnson had made considerable progress in the program and had internalized much more of the information than he was able to demonstrate. At the time, Johnson was "participating positively" in phase 3 of the program, but his participation tended to be cyclic, resulting in him being placed back down at the lowest level. He had never advanced beyond phase 3. Dr. Mintz stated, "I do not feel that Mr. Johnson is a pedophile. . . . I do not view him as being a particularly dangerous individual." Dr. Mintz also stated, "I would recommend if possible that some consideration be given in terms of alternative avenues for Mr. Johnson to complete the program and for example he desires participation in a transitional release program." He continued, "I feel that Mr. Johnson can benefit from a transitional program although I recognize other issues involved." He also recommended that Johnson continue mental health treatment and consider psychotropic medication.

In the 2013 evaluation, Dr. Mintz gave Johnson the same five diagnoses as in the 2012 evaluation. He stated Johnson "has made steady progress in terms of resolving core

psychosexual issues" and "is continuing to make progress in terms of mental illness symptoms." He noted Johnson was making an active effort to participate in his treatment, and "it is my opinion that he has made the most progress within the last 12 months but has made steady progress in these areas over a longer period of time." He again stated that he believed Johnson had internalized more of the program than he was able to demonstrate. Dr. Mintz also noted, "I do not view Mr. Johnson as a pedophile and I do not view him as a sexually dangerous individual at this time." He added, "I believe he has internalized the information and attitudes of the Larned State Hospital Sexual Offender Treatment Program Unit to the point where he appears capable of moving onto . . . a transitional release arrangement." He continued, "If possible, Mr. Johnson will be given some latitude in terms of alternative avenues for him to complete the program." He also noted Johnson would benefit from formal mental health treatment and should consider psychotropic medication.

Beall testified at the *Van Cleave* hearing that he purposefully chose not to include Dr. Mintz' 2013 evaluation with the amended petition, because he believed the 2012 and 2013 evaluations were substantially similar. He reasoned that if the district court saw a substantially similar evaluation to one the court had recently found insufficient to establish probable cause, Johnson would have a harder time demonstrating that the petition was not frivolous. Johnson puts a lot of emphasis on Beall's statement at the hearing that the 2013 evaluation "regurgitated the same findings almost as the prior 2012 report." What he fails to mention, though, is that Beall added, "I got the expert [evaluation] before [the State's motion to dismiss] was filed. And it wasn't regurgitated. I don't want that to be the statement, it's not regurgitated, a lot of the information contained in it and the recommendation is almost identical in the 2012 report and the 2013 report." Beall's assessment that the 2012 and 2013 evaluations were substantially similar was accurate and supported a finding that he properly investigated the issue before deciding whether to include the 2013 evaluation in the amended petition.

13

Johnson further contends the Kansas Supreme Court precedent required Beall to present Dr. Mintz' evaluation. In support of his argument, he cites to a portion of *Burch*, in which the court held that appellate courts review determinations of probable cause in SVPA proceedings de novo. 296 Kan. at 223. In reaching this conclusion, the court noted an appellate court is in the same position as the district court to determine probable cause because the determination relies only on expert reports and arguments of counsel. 296 Kan. at 223. Johnson argues this means counsel must present expert reports when arguing probable cause. *Burch*, however, does not support this argument, and Johnson points to no other authority.

Johnson adds that by not attaching the 2013 evaluation to the petition, Beall rendered the information in the petition "unsubstantiated, self-serving hearsay." The court, however, stated at the hearing that it would accept the facts as set forth in the petition in reaching a decision. There is no indication that the court refused to consider the information in the petition because Beall did not attach the 2013 evaluation.

Johnson also argues Beall was deficient because he actively argued against the district court's consideration of Dr. Mintz' 2013 evaluation. At the hearing, Beall testified:

> "When the Court allowed the petitioner to amend [his petition] he named several factual issues contained in his petition basically concerning the fact that when Dr. Mintz had evaluated him for the last three to four years in the new evaluation, which isn't before the Court because we haven't heard the evidence from Dr. Mintz, so I'm only relying on it to give the Court some basis for prima facie evidence for a petition, basically that he has progressed and he has internalized a lot of the information that the program provides, but obviously with the evaluations that were received from Larned that internalization had not been part of their evaluation.
>
> "And that when the Court—if the Court would endeavor us to proceed further that Dr. Mintz would be allowed to testify to what he meant by internalizing as in the evidence or information they received at Larned to maybe have a rational fact finder

14

determine that, yeah, he needs to proceed to conditional release or some other release at where he's at this time."

As the State notes, Beall argued that the court should grant a hearing based on the statements about Dr. Mintz' 2013 evaluation. In doing so, Beall correctly acknowledged Dr. Mintz' evaluation was not before the court. He did not, however, tell the court it should not consider the evaluation or the information from it.

Johnson also argues that the district court erred in its understanding of the arguments he presented in his brief following the *Van Cleave* hearing. According to Johnson, the court erroneously concluded he argued that the 2013 report provided a different diagnosis than the 2012 report, and Dr. Mintz concluded for the first time in 2013 that he was not a pedophile. Johnson contends his argument was that the *recommendations* were different. He seems to be arguing that the recommendation in the 2013 evaluation was different because it included Dr. Mintz' conclusion that Johnson was not a pedophile and was not dangerous. Dr. Mintz, however, included the same statement in the 2012 evaluation in a section titled "Summary and Recommendations." Johnson does not make clear why he believes this conclusion is part of the recommendation in 2013 and not part of the recommendation in 2012. Furthermore, he does not explain why it would be legally relevant whether this information was specifically included as part of a recommendation and not simply included in the evaluation as a whole. Thus, this argument is without merit.

Throughout his brief, Johnson also asserts that the 2013 evaluation complies with the legally required or legally approved language for a finding of probable cause. There is no legally required language. In fact, the *Burch* court specifically held that "a finding of probable cause does not necessarily require that the petitioner proffer a recommendation containing the exact words used by the statute." 296 Kan. at 226.

15

As Johnson himself admits, Beall made a strategic decision not to include Dr. Mintz' 2013 evaluation with the amended petition. There is nothing in the record, or in Johnson's arguments, to indicate Beall did not conduct a thorough investigation of the relevant law or facts. Furthermore, Beall is entitled to a presumption that he acted within the broad range of reasonable professional assistance. Johnson has not rebutted this presumption. Therefore, the district court did not err in finding Beall was not ineffective, and we affirm.

*Prejudice*

Even if Beall's performance was deficient, Johnson is unable to demonstrate prejudice. To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Given the procedural posture of this case and the requirements of K.S.A. 2013 Supp. 59-29a11(a), the district court almost certainly would have denied Johnson's petition even if Beall had included Dr. Mintz' 2013 evaluation. Once a court has denied a petition for transitional release or discharge, subsequent petitions are subject to summary denial if the petition did not allege facts that the petitioner's condition had so changed that a hearing was warranted. K.S.A. 2013 Supp. 59-29a11(a). The statute mandates the court should attempt to determine whether a petition is frivolous and deny a hearing "whenever possible." K.S.A. 2013 Supp. 59-29a11(a). In this case, Johnson appears to have filed six petitions prior to the one at issue in this case, and the district court denied all of them. Additionally, just 1 year prior, the court held a probable cause hearing on one of these petitions. After reviewing Dr. Mintz' 2012 evaluation at that hearing, the court denied Johnson's petition.

16

Had the district court had access to Dr. Mintz' full 2013 evaluation, the outcome is unlikely to have been any different. Both the 2012 and 2013 reports were substantially similar. Both evaluations indicated that while Johnson had made progress, he remained in phase three of the seven-phase program. Both evaluations concluded Johnson was not a pedophile but affirmed his diagnoses of paraphilia and personality disorder. Both contained cautious recommendations for transitional release but recognized an ongoing need for treatment. Because of these similarities, the 2013 report could not have established that Johnson's condition had so changed that a hearing was warranted. The only suggestion of significant change was Dr. Mintz' statement that Johnson had made the most progress within the last year, and Beall included this in the amended petition. Johnson cannot establish prejudice. We affirm the district court's ruling.

Affirmed.