(263 P.3d 199)
No. 104,274

In the Matter of the Care and Treatment of
JOHNNY D. TWILLEGER.

Opinion filed August 26, 2011.

*Clayton E. Soule*, of Taylor, Krusor & Passiglia, LLP, of Winfield, for appellant.

*Christine M. T. Ladner*, assistant attorney general, and *Steve Six*, attorney general, for appellee.

Before GREENE, C.J., MALONE and BRUNS, JJ.

BRUNS, J.: Johnny D. Twilleger was civilly committed to the custody of the Secretary of the Kansas Department of Social and Rehabilitation Services (SRS) in September 2003. Since that time, he has been a resident in the Sexual Predator Treatment Program (SPTP) at Larned State Hospital and at Osawatomie State Hospital. Twilleger appeals various decisions made by the district court following an annual review hearing held on March 5, 2010. For the reasons set forth in this opinion, we affirm the district court's decisions.

## FACTUAL AND PROCEDURAL BACKGROUND

Between 1987 and 1999, Johnny Twilleger was convicted of four sex offenses against prepubescent females, and he has been a registered sex offender since 1997. In February 2003, a petition was filed in the Cowley County District Court alleging that Twilleger was a sexually violent predator as defined by the Kansas Sexually Violent Predator Act (SVPA), K.S.A. 59-29a01 *et seq*. He stipulated to the allegations set forth in the petition, and he was ordered into SRS custody in September 2003.

Prior to being placed in SRS custody, Twilleger was diagnosed as meeting the criteria for "Pedophilia, sexually attracted to females, limited to incest, nonexclusive type" and "Personality Disorder, NOS, with narcissistic, obsessive-compulsive, and passive-aggressive features." In annual reports submitted to the district court from 2004 to 2009, one or more licensed psychologists found that Twilleger remained a "sexually violent predator" and continued to suffer "from a mental abnormality which makes it likely that he will engage in repeat acts of sexual violence."

For several years, Twilleger steadily progressed through the treatment phases of the SPTP. In November 2007, Twilleger reached phase six of the program and was placed by SRS into a transition house located on the grounds of Osawatomie State Hospital. While in this structured outpatient setting, he was allowed increased interaction with the community, including working for a construction company and obtaining a driver's license.

Unfortunately, Twilleger violated several program rules at the transition house, including having contact with one of his victims,

who is now an adult. Although Twilleger was allowed to continue in phase six of the SPTP after he agreed to have no further contact with his victim, he placed a call to her in December 2008. While in phase six of the SPTP, it was also noted that Twilleger had issues with respecting authority, had difficulty getting along with the other residents, and had failed several polygraph tests. Thus, Twilleger was demoted to phase three of the SPTP and was returned to Larned State Hospital for further inpatient treatment on December 29, 2008.

After his return to Larned State Hospital, Twilleger advanced to phase four of the program. On September 29, 2009, SRS filed a Yearly Report of Resident's Mental Condition. The Yearly Report was signed by Austin T. DesLauriers, Ph.D., a licensed psychologist and the clinical director of the SPTP. In his report, Dr. DesLauriers concluded "that Mr. Twilleger's mental abnormality is not so changed that it would yet be safe for [him] to be placed in full transitional release at this time." The following day, the district court appointed legal counsel to represent Twilleger, who had previously filed a pro se motion for transitional release and a motion for appointment of counsel.

On October 27, 2009, Twilleger's counsel filed a petition for review and placement into transitional release program and a motion seeking reinstatement into transitional release program on his behalf. Subsequently, on February 2, 2010, a motion seeking appointment of independent expert pursuant to K.S.A. 59-29a08(a) was also filed by counsel on behalf of Twilleger.

An annual review hearing was held by the district court on March 5, 2010. At the hearing, the district court also heard the pending motions. Twilleger was transported to the hearing and testified on his own behalf. The State called Dr. DesLauriers, Dr. Marc Schlossberg, a licensed psychologist in Lenexa who had provided outpatient treatment to Twilleger while he was residing at the transition house, and Stacey Paige, the director of the transition house, as witnesses.

On April 5, 2010, the district court entered an 11-page memorandum opinion and journal entry of judgment, which set forth specific findings of fact and conclusions of law. The district court

stated that it did not believe the appointment of an independent expert to perform an evaluation was necessary at that point in time. The district court also stated that it had never ordered Twilleger into transitional release (phase seven of the SPTP) and, as such, that the procedures set forth in K.S.A. 59-29a08(f) were not applicable. Finally, the district court concluded that probable cause did not exist to believe Twilleger's mental condition had changed such that he should be entitled to a trial on whether he should be ordered into transitional release at that point in time. Thereafter, Twilleger timely filed this appeal.

## ISSUES PRESENTED AND ANALYSIS

There are three issues presented on appeal. First, did Twilleger's placement by SRS in the transition house on the grounds of Osawatomie State Hospital qualify as transitional release and, if so, was he denied his rights pursuant to K.S.A. 59-29a08(g) when he was demoted from the transition house to Larned State Hospital without a hearing? Second, did the district court err in denying Twilleger's motion for the appointment of an independent examiner pursuant to K.S.A. 59-29a08(a)? Third, is there probable cause to believe that Twilleger's mental state or personality disorder has so changed that he is safe to be placed into transitional release?

### Overview of Kansas Sexually Violent Predator Act

The SVPA controls the civil commitment of persons who are deemed to be sexually violent predators. A "sexually violent predator" is defined as "any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." K.S.A. 59-29a02(a). Although the term "personality disorder" is not defined in the SVPA, the term "mental abnormality" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." K.S.A. 59-29a02(b).

If a jury or trial judge finds a person to be a sexually violent predator, he or she is committed to SRS custody "until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large. Such control, care and treatment shall be provided at a facility operated by [SRS]." K.S.A. 59-29a07(a). Once in SRS custody, a sexually violent predator is entitled to a yearly review of his or her mental condition pursuant to K.S.A. 59-29a08(a). The committed person is entitled to be represented by counsel at an annual review hearing, but he or she is not entitled to be personally present at the hearing. K.S.A. 59-29a08(a). Likewise, the committed person *"may* retain, or if the person is indigent and so requests the court *may* appoint a qualified professional person to examine such person" in connection with the annual review hearing. (Emphasis added.) K.S.A. 59-29a08(a).

If the district court concludes at an annual review hearing "that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release, then the court shall set a [second] hearing on the issue." K.S.A. 59-29a08(c)(1). At the second hearing or trial, the committed person is afforded the same rights as he or she was entitled to during the initial commitment proceeding, including the right to a trial by jury. K.S.A. 59-29a08(c)(3). In addition, in preparation for the second hearing or trial, the committed person *"shall* also have the right to have experts evaluate [him or her] and the court *shall* appoint an expert if the person is indigent and requests an appointment." (Emphasis added.) K.S.A. 59-29a08(c)(3). Moreover, the State is once again required to prove beyond a reasonable doubt "that the committed person's mental abnormality or personality disorder remains such that the person is not safe to be placed in transitional release and if transitionally released is likely to engage in acts of sexual violence." K.S.A. 59-29a08(c)(3).

*K.S.A. 59-29a08(g) Is Not Applicable to This Action Because Twill-
eger Was Never Ordered into Transitional Release by the District
Court.*

Twilleger contends that because he was transferred by SRS from
Larned State Hospital to a transition house located on the grounds
of Osawatomie State Hospital, he had been placed in the transi-
tional release program. He also contends that a committed person
does not need court approval to be placed in transitional release.
As a result, Twilleger argues that he was entitled to the procedural
rights set forth in K.S.A. 59-29a08(g) before he was removed from
the transition house and returned to Larned State Hospital for
further inpatient treatment.

The SPTP is comprised of seven treatment phases that must be
completed by a committed person who has been placed in SRS
custody. The first five phases involve inpatient treatment at Larned
State Hospital, while phase six involves placement in a transition
house located at Osawatomie State Hospital. In phase six, although
the committed person is given the opportunity to demonstrate his
or her ability to perform independent tasks such as getting a job
and purchasing a cell phone, he or she continues to reside in a
facility operated by SRS.

In transitional release, which is phase seven of the SPTP, a com-
mitted person remains in SRS custody but lives independently in
preparation for his or her successful return to the community and
court-monitored conditional release. If a committed person suc-
cessfully completes all seven phases of the SPTP, he or she may
be placed by the district court on conditional release. At that point,
the person will no longer be in SRS custody. K.S.A. 59-29a19(a).
After a minimum of 5 years of violation-free placement on condi-
tional release, the committed person may be finally discharged
from civil commitment by the district court pursuant to the terms
of K.S.A. 59-29a19(b).

The SVPA provides three ways for a committed person to be
ordered into transitional release or phase seven of the SPTP. First,
as indicated above, if probable cause is found at an annual review
hearing pursuant to K.S.A. 59-29a08(a), the district court must

hold a second hearing or trial at which the State has the burden to prove beyond a reasonable doubt that placement of the committed person into transitional release is not appropriate. K.S.A. 59-29a08(c)(1), (3). Second, if the Secretary of SRS finds that the committed person is a candidate for transitional release, authorization may be given for the person to petition the district court for placement pursuant to K.S.A. 59-29a10(a). Third, the committed person can petition the district court without the Secretary's approval pursuant to K.S.A. 59-29a11(a).

Regardless of which procedure is used, it is clear that a court order is required for placement of a committed person into transitional release. In the present action, there is nothing in the record to reflect that Twilleger was ever ordered by the district court into transitional release or phase seven of the SPTP. Rather, a review of the record reveals that the highest level of the SPTP reached by Twilleger was phase six, when he was placed by SRS in the transition house on the grounds of Osawatomie State Hospital. As a result of several violations of program rules, including contact with one of his former victims, Twilleger was demoted by SRS from phase six to phase three of the SPTP and was returned to Larned for further inpatient treatment.

It has been recognized that courts should generally defer to the judgment of the mental health professionals on the treatment staff of the SPTP regarding treatment methods that are appropriate for a particular person. See *Merryfield v. State*, 44 Kan. App. 2d 817, 821, 241 P.3d 573 (2010) (citing *Youngberg v. Romeo*, 457 U.S. 307, 322-23, 102 S. Ct. 2452, 73 L. Ed. 2d 28 [1982]); *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003). Here, we find that the mental health professionals working with the SPTP appropriately exercised their judgment to promote Twilleger to phase six of the program and to demote him to phase three of the program as a result of his actions while a resident of the transition house. Furthermore, because Twilleger had never been ordered into transitional release by the district court, we conclude that the procedures set forth in K.S.A. 59-29a08(g) are not applicable in this case.

*The District Court Did Not Abuse Its Discretion in Denying Twill-eger's Motion for the Appointment of an Independent Examiner.*

Twilleger claims that he had the right to have an expert appointed to conduct an independent examination of his condition pursuant to K.S.A. 59-29a08(a). The relevant portion of this statute, which addresses the procedure for annual review of a committed person's mental condition, provides that "[t]he person may retain or if the person is indigent and so requests the court may appoint[,] a qualified professional person to examine such person." K.S.A. 59-29a08(a). Our court has held that "[t]he legislature's use of the word 'may' in K.S.A. 2007 Supp. 59-29a08(a) dictates that [appointing an examiner at the annual review stage] should be left to the discretion of the district court." *In re Care & Treatment of Williamson*, Nos. 99,553 and 99,554, 2009 WL 248229, at *3 (Kan. App. 2009) (unpublished opinion), *see also In re Care & Treatment of Miles*, 42 Kan. App. 2d 471, 474, 213 P.3d 1077 (2009) ("[T]he statute . . . permits the court in its discretion to appoint a qualified professional person for an independent examination of the person committed."). We thus review this issue under an abuse of discretion standard.

Here, the district court thoughtfully considered whether to appoint an independent examiner in connection with the annual review hearing. In its decision, the district court set forth four reasons for concluding that the appointment of an independent examiner was not necessary at that point in time. First, in finding the 2009 evaluation by the SPTP treatment staff to be objective, the district court noted that Twilleger had advanced up to phase six of the program "relatively quickly" based on prior evaluations completed by the same evaluators. Second, the district court noted that Twilleger had not only been evaluated by the treatment staff at Larned State Hospital, but he had also been evaluated by Dr. Marc Schlossburg, a licensed psychologist from Lenexa who treated Twilleger when he resided at the transition house at Osawatomie State Hospital. Third, the district court found that based on the evidence presented at the hearing, all of the facts supported the conclusion that Twilleger remained a sexually violent predator.

Fourth, the district court found that the cost of retaining an independent professional to evaluate Twilleger was not justified at that point in time based on the evidence presented at the annual hearing.

It is important to recognize that the State did not have independent experts testify at the annual review hearing. Rather, the State relied upon the evaluations performed by the mental health professionals who actually treated Twilleger. Unlike K.S.A. 59-29a08(c)(3), which states that a district court "shall" appoint an expert if an indigent person so requests in preparation for a second hearing or trial, a district court clearly has the discretion to determine whether to appoint an independent expert at the annual review stage pursuant to K.S.A. 59-29a08(a).

"Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. [Citation omitted.]" *Unruh v. Purina Mills*, 289 Kan. 1185, 1202, 221 P.3d 1130 (2009). Based on his multiple violations of program rules while he was in phase six of the SPTP, Twilleger had demonstrated that he was not yet ready to be promoted to phase seven or transitional release. Moreover, at the time of the annual review hearing, Twilleger was only in phase four of the seven phase treatment program. Thus, we conclude that the district court did not abuse its discretion when it denied Twilleger's request for the appointment of an independent examiner pursuant to K.S.A. 59-29a08(a).

*There Is Not Probable Cause to Believe That Twilleger's Mental Condition or Personality Disorder Has So Changed as to Make It Safe for Him to Be Placed into Transitional Release.*

After considering the evidence presented at the annual review hearing, the district court found "that the conclusion within the [2009 Yearly Report] that Mr. Twilleger remains a sexually violent predator is supported by the facts." Moreover, the district court found that probable cause did not exist at that point in time to believe Twilleger's condition had changed such that he was entitled to a second hearing or trial regarding placement into transitional

release. In particular, the district court was concerned about Twilleger's failure "to understand the boundary between himself and one of his victims" when he was in phase six of the SPTP. The district court was also concerned that Twilleger had been "exhibiting narcissistic behaviors and failed his last polygraph examination."

When a person committed under the SVPA seeks to be placed by the district court into transitional release, he or she has the burden to establish probable cause for a second hearing on the issue. *In re Care & Treatment of Sipe*, 44 Kan. App. 2d 584, 592, 239 P.3d 871 (2010). Hence, the district court must consider the evidence in the light most favorable to the committed person to "determine whether there is sufficient evidence to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the committed person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release." 44 Kan. App. 2d at 592-93. Since a probable cause determination under the SVPA is comparable to the probable cause determination made at the preliminary hearing stage of a criminal proceeding, it is appropriate that we apply the same de novo standard of review under the SVPA as we apply in the criminal context. See 44 Kan. App. 2d at 590-91.

Here, the evidence at the annual review hearing consisted of Twilleger's testimony and testimony of mental health professionals who had treated him in the SPTP. Although Twilleger testified that he believed he had sufficiently progressed in the SPTP to be ready for transitional release, such a position is not supported by the evidence. Significantly, although he discounted the significance of his violation of the rules while he resided at the transition house, Twilleger admitted during his testimony that he had "flunked" several polygraph tests, that he had made a gift for one of his victims, that he put his victim's phone number on the "fave-five" list on his cell phone, that he agreed to take his victim's phone number off his cell phone, that he subsequently placed a call to the victim's number, that his victim called him back, and that he got defensive when his psychologist found the victim's number on his cell phone.

The testimony of Dr. Austin DesLauriers, the clinical director of the SPTP, highlights the significance of Twilleger's conduct when he was a resident of the transition house:

"Of chief concern to me was that John did not seem to see the potential problems there [in contacting one of his victims]. He also spoke in one of the e-mails I had . . . that he had concerns that [his victim] would feel abandoned again. And to me, that was a very inappropriate perspective for someone who had offended against another person because it spoke to the idea of somehow there had been an abandonment earlier, and somehow there was a relationship there.

"[T]hat somehow in John's mind there was still a real connection there.

"And to me, that's also a risk factor."

In his 2009 Yearly Report, Dr. DesLauriers had concluded that Twilleger's "mental abnormality is not so changed that it would yet be safe for [him] to be placed in full transitional release at this time." In support of this position, Dr. DesLauriers testified at the annual review hearing that Twilleger required further inpatient treatment at Larned "to focus on . . . how there might be some real problems with maintaining contact with his victim, and that in some way his perspective . . . needed altering in order for him to be a safe person." Dr. DesLauriers further testified that in his opinion, "the process worked as it should, because the point of phase six is to identify if there are issues that maybe aren't worked all the way through and need more attention."

In addition, Twilleger's psychologist while he was a resident of the transition house, Dr. Marc Schlossberg, echoed Dr. DesLauriers' concerns. Dr. Schlossberg testified that when he found out that Twilleger had made a gift for one of his victims, he "was stunned" and believed that "there is a risk of re-victimization, at least psychologically, that we're concerned about." Dr Schlossberg further testified that "[t]he idea that [the gift] was to kind of direct [the victim's] spiritual path had me concerned in terms of teaching someone [Twilleger] had victimized the right way." Finally, Dr. Schlossberg testified that Twilleger failed to accept responsibility for contacting one of his victims and attempted to blame others for his actions.

After reviewing the record in the light most favorable to Twilleger, we agree with the district court that there was not sufficient

evidence to cause a person of ordinary prudence to conscientiously entertain a reasonable belief that Twilleger's mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release at the time of the annual review hearing held on March 5, 2010.

Affirmed.

\* \* \*

GREENE, C.J., concurring: I write separately only to express concern regarding the majority's suggestion that in evaluating the decision of the staff to demote Twilleger from phase 6 to phase 3 of the program, we "should defer to the judgment of the mental health professionals on the treatment staff of the SPTP regarding treatment methods that are appropriate for a particular person." I recognize that this principle is correctly cited to *Merryfield v. State*, 44 Kan. App. 2d 817, 821, 241 P.3d 573 (2010), but I respectfully suggest that the *Merryfield* panel was overbroad in lifting this principle from *Youngberg v. Romeo*, 457 U.S. 307, 322-23, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982).

The United States Supreme Court in *Youngberg* addressed the due process rights of an involuntarily committed mentally retarded person, who claimed that his "training" had been inadequate. The Court merely suggested that, "[i]n determining what is 'reasonable'—in this and in any case *presenting a claim for training by a* State—we emphasize that courts must show deference to the judgment exercised by a qualified professional." (Emphasis added). 457 U.S. at 322-23. I respectfully suggest that although we may defer to such professionals on the reasonableness of minimally adequate training for such persons, it is quite a different matter to "defer" to such professionals on the more important questions of individual progress of the person toward goals and advancement through "phases," and ultimately on the question whether the person's abnormality or disorder has so changed that the person is safe to be at large.

Moreover, I respectfully suggest that the Supreme Court's use of the term "defer" was taken out of context by the *Merryfield*

panel. I do not believe the Supreme Court has mandated that courts step aside completely in such matters. In fact, the Court suggested that a question of training adequacy, if made by a professional, may not lead to liability for the professional unless *"the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment."* (Emphasis added.) 457 U.S. at 323.

The constitutionality of our Sexually Violent Predator Act is dependent on statutory and constitutional due process considerations. See *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed 2d 501 (1997). It is necessary to balance on a case-by-case basis the liberty of the individual and the demands of an organized society. *Poe v. Ullman*, 367 U.S. 497, 542, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961) (Harlan, J. dissenting) (quoted in *Youngberg*, 457 U.S. at 320). Outright "deferral" to institution professionals on matters of individual progress toward stated goals is not in keeping with this court's responsibility to balance fundamental rights against institutional demands.

I concur in the judgment here because I agree with the ultimate conclusion that overwhelming evidence supported a reasonable belief that Twilleger's abnormality or disorder had not so changed that he was safe to be placed in transitional release.