NOT DESIGNATED FOR PUBLICATION

No. 124,687

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
DOUGLAS RAY GIRARD.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed August 5, 2022. Affirmed.

*Chris Biggs*, of Knopp & Biggs, P.A., of Manhattan, for appellant.

*Kurtis K. Wiard*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., HURST, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Douglas Girard, who is civilly committed in Kansas' Sexual Predator Treatment Program (the Program), appeals the district court's decision denying his request for an independent examiner at his annual review hearing. He asserts an examiner was warranted because although he has complied with the treatment requirements, he has not progressed past the lowest tier of the Program. But while Girard did show strong participation, tests showed that he remained a risk to the public. Thus, while we acknowledge Girard's efforts and his treatment participation, we find the district court did not abuse its discretion and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Girard was convicted of endangering a child in 1995 (the result of a plea after he allegedly sexually abused a young girl), aggravated indecent solicitation of a child in 1996, and two counts of aggravated indecent liberties with a child in 2005. In 2009, when

he completed his indecent-liberties sentence, Girard was involuntarily committed to the Program at Larned State Hospital. The Kansas Supreme Court later affirmed the decision to place Girard in the Program. *In re Care & Treatment of Girard*, 296 Kan. 372, 294 P.3d 236 (2013).

Kansas law requires participants in the Program to be "committed to the custody of the secretary for aging and disability services for control, care and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large." K.S.A. 2021 Supp. 59-29a07(a). To ascertain whether this standard has been met, committed persons undergo annual examinations of their mental condition. K.S.A. 2021 Supp. 59-29a08(a).

In August 2021, Girard underwent his annual review of his mental condition. The review included examining Girard's history and past evaluations, interviewing him, and conducting actuarial risk assessments. The resulting report noted diagnoses of pedophilic disorder, major depressive disorder, cannabis use disorder, methamphetamine use disorder, and a personality disorder with antisocial and borderline features.

The report of Girard's annual review also discussed his participation in treatment. During the evaluation period, Girard consistently participated in therapy groups and available classes, though the COVID-19 pandemic limited what was available. He completed fantasy logs and rational-self-analysis exercises consistently, and he attended 100% of his individual therapy sessions. Girard also completed polygraph testing without issue. He attended 55% of his elective leisure sessions and no open leisure sessions, but the review noted that the pandemic limited these sessions and skewed their statistics. And Girard completed a nutrition class, attending 9 of 10 sessions—the lone absence was excused—and obtaining a passing grade.

Girard was not working at the time of his evaluation and had one rule violation for "trading"—borrowing an item from a person in the Program without authorization—but he planned to start working again once he finished a restrictive period for the violation. Despite these efforts, however, Girard remained on Tier 1 of the Program—the lowest tier, with the greatest restrictions—as he had since his initial commitment. The annual-review report mentioned that one of Girard's upcoming goals was to complete a relapse prevention plan, which he had not yet done to the Program's satisfaction.

Girard also underwent several actuarial risk-assessment tests as part of his annual review. His ACUTE-2007 test categorized him as low risk for sexual violence and recidivism. But the Static-99R-2003 assessment—which is used "to estimate the probability that [he] will reoffend against a child or a non-consenting adult"—placed him in the "'Above Average Risk'" category. The STABLE-2007 test—which assesses a person's "capacity for relationship stability, impulsivity, and deviant sexual interest"—placed him in the "'Moderate Treatment Needs'" category. The combined results from his Static-99R-2003 and STABLE-2007 assessments suggested an "'Average'" risk profile. The report also indicated that in his interview, Girard "admitted to some recent sexual thoughts involving children."

Based on the information from the annual review, the report concluded that Girard should remain at Larned State Hospital and was not ready for transitional release. Put another way, the report found that Girard's mental abnormality or personality disorder had not changed enough to render placement in transitional release safe.

Girard petitioned the district court for an annual-review hearing. As part of his petition, Girard incorporated by reference a motion he had filed before in his 2020 annual review proceedings. Girard asked the district court to grant a transitional-release hearing, appoint an independent examiner to evaluate him, and order him moved to Tier 2 of the Program.

The district court held the annual-review hearing in November 2021. It heard arguments from Girard's attorney and the State, and Girard testified remotely. Girard expressed frustration at not having progressed after 12 years of participating in the Program. During this time, he had never had an independent evaluation. While in the Program, he had worked with about 26 therapists, including 3 in the past year. He testified that he used a rational-thinking analysis whenever he had inappropriate thoughts, and that because of health issues—broken bones and nerve problems in his lower back and morbid obesity—he could not achieve an erection and had no sex drive.

According to Girard, nobody involved with his treatment had explained why he was still on the lowest Program tier, but people had told him during the last six years that his relapse prevention plan was inadequate. He stated that different therapists wanted different things in this plan and, with these changing standards and high turnover, he has struggled to keep up. Most recently, Girard stated that his therapist wanted him to add and address his risk factors in his relapse plan, but Girard had trouble doing so because of poor vision, making it difficult to use the computer.

After hearing this testimony and reviewing the report, the district court denied Girard's requests. The court found, based on the results from Girard's actuarial tests, that there was not probable cause to believe transitional release would be safe. And the court explained that, despite Girard's progress, he had not shown good cause to appoint an independent examiner and his "participation and lack of compliance with institutional requirements did not show progress that justifies the cost of an examination."

Girard now appeals the district court's denial of his request for an independent examiner. He does not challenge the district court's decisions regarding his movement to Tier 2 or transitional release.

DISCUSSION

Kansas law allows a person committed under the Sexually Violent Predator Act to retain an independent examiner to evaluate the person's mental condition for an annual-review hearing. If the person cannot afford an independent examiner, he or she can ask the court to appoint one. K.S.A. 2021 Supp. 59-29a08(c).

When faced with a request for an independent examiner, the district court must "determine whether the services are necessary" and what they will reasonably cost. K.S.A. 2021 Supp. 59-29a08(c). In doing so, the court considers several factors, including "the person's compliance with institutional requirements and the person's participation in treatment" in order "to determine whether the person's progress justifies the costs of an examination." K.S.A. 2021 Supp. 59-29a08(c).

The district court has considerable discretion to determine whether to appoint an independent examiner. K.S.A. 2021 Supp. 59-29a08(c) ("The appointment of an examiner is discretionary."). Appellate courts review such decisions for an abuse of discretion. *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 310, 263 P.3d 199 (2011). A court abuses its discretion if its decision is unreasonable—that is, no reasonable person would agree with it—or if the decision is based on a legal or factual error. *State v. Wilson*, 301 Kan. 403, Syl. ¶ 2, 343 P.3d 102 (2015).

In his brief, Girard attacks the general statutory framework of the Sexually Violent Predator Act and the independent-examiner provisions, focusing less on the specifics of why the court erred in not appointing an examiner here. He claims that he is stuck in a loop where he can never meaningfully seek transitional release because, without an independent examination, Program staff will approve annual reports regardless of his progress. Girard asserts that an independent examination is a necessary check on the

5

Program and is the only way he can show probable cause to warrant a transitional-release hearing.

But courts do not work in broad generalities; we are instead charged with considering the facts surrounding this annual review and the district court's evaluation of Girard's current request. And while we may sympathize with Girard's claims regarding the turnover of his therapists and his other struggles, appellate courts may not substitute our judgment for that of the district court judge, who is present to hear testimony and weigh the evidence presented and who is vested with discretion to grant or deny a request for an independent examination. See *Twilleger*, 46 Kan. App. 2d at 310. After carefully reviewing the record and the parties' arguments, we conclude the district court did not abuse its discretion when it denied Girard's request.

Like the district court, we acknowledge Girard's efforts in treatment during this year. Other than his "trading" violation, Girard participated well in therapy and in other Program requirements; his annual review noted few issues in this regard. But while participation is important and laudable, it is not the sole factor the district court considers when a person requests an independent examiner. See K.S.A. 2021 Supp. 59-29a08(c).

The district court emphasized at the annual-review hearing that despite Girard's efforts, it remained concerned by the fact that multiple assessments continued to show that Girard was in average or above-average risk categories for sexual deviation and recidivism. As the court noted in its ruling, Girard's test results show he is improving in these areas. Yet despite this improvement, his 2021 results show he remains a safety risk—a factor that supports the district court's decision not to appoint an independent examiner. Other aspects of the annual review also showed he remained a risk; in one part of his interview, he claimed to have no remaining sex drive, but in another, he admitted to recent sexual thoughts about children. And Girard had not completed a relapse treatment plan to the Program's satisfaction. The court considered all this evidence—

along with his institutional compliance and participation in treatment—when determining whether Girard's progress justified the costs of an independent examination. And in light of this evidence, the court's denial of Girard's request was reasonable and within its broad discretion.

Girard has not demonstrated that the district court abused its discretion when it denied his request for an independent examiner.

Affirmed.