NOT DESIGNATED FOR PUBLICATION

No. 127,154

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care
and Treatment of
CALVIN WESLEY RICH.

MEMORANDUM OPINION

Appeal from Barton District Court; STEVEN E. JOHNSON, judge. Submitted without oral argument. Opinion filed December 6, 2024. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HURST, P.J., ISHERWOOD and PICKERING, JJ.

PER CURIAM:  Calvin Wesley Rich, having been civilly committed as a sexually violent predator for 20 years, petitioned the district court for transitional release and requested appointment of an independent examiner. After an initial hearing, the district court denied Rich's request for an independent examiner, and found that Rich failed to establish probable cause warranting an evidentiary hearing regarding his request for transitional release. Rich appeals both denials.

Given Rich's refusal to meaningfully participate in the treatment program, he has failed to show that the district court abused its discretion in denying his request for appointment of an independent examiner. Additionally, the district court did not err in denying his petition for transitional release. The district court's decision is affirmed.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 1993, Rich was convicted of aggravated sodomy. Ten years later and shortly before the end of his prison sentence, the State of Kansas filed a petition alleging that Rich was a sexually violent predator subject to involuntary commitment under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 et seq. After Rich stipulated to the factual allegations underlying the State's petition, the court committed Rich to the custody of the Kansas Department of Social and Rehabilitation Services (now known as the Kansas Department for Aging and Disability Services [KDADS]) for treatment in the Sexual Predator Treatment Program (SPTP) at Larned State Hospital. Rich has remained civilly committed at Larned under the KSVPA ever since.

As required under the KSVPA, Rich receives an examination of his mental condition once every year. See K.S.A. 2023 Supp. 59-29a08(a). On September 1, 2023, KDADS provided Rich with the annual examination report summarizing its findings related to his treatment and his mental condition. The KDADS report recommended that Rich was not fit for transitional release and notified Rich of his right to petition the court for transitional release over its objection, as required by K.S.A. 2023 Supp. 59-29a08(a). The KDADS examination report, which was filed with the district court, included a review of Rich's medical records, initial evaluations from 2003, data collected in the Kansas Adult Supervised Population Electronic Repository, documentation from his 2022 annual examination, and information from SPTP staff members. SPTP records provided a history of Rich's prior criminal convictions and other uncharged sexual offenses. Though Rich had refused to participate in the interview portion of his annual examination since 2019, a forensic evaluator conducted a 120-minute interview with him in August 2023.

The 2023 examination report identifies Rich's prior convictions for aggravated indecent solicitation of a child and lewd and lascivious behavior in 1986 and for lewd and lascivious behavior in 1983 and 1981. The report also mentions other prior sexual

2

offenses and possible criminal charges that Rich allegedly reported in his initial evaluation in 2003 or that were otherwise indicated by the available records. The report states, however, that "[r]ecords revealed no other charges or convictions, sexual or otherwise," excepting the 1993 conviction which ultimately led to Rich's commitment under the KSVPA.

The report states that Rich remains at the lowest level of the SPTP and that the goal of the first level is "the acquisition of skills necessary to allow [Rich] to safely function in more challenging, open society environments, as well as encouraging him to address the individual issues which contributed to his placement at SPTP." To progress to the next level, Rich would "have to be actively involved in treatment," which means attending therapy groups; having no recent instances of physical or verbal aggression; avoiding security-risk status for six months; maintaining medication compliance; turning in all fantasy logs and other assignments regularly for six months; participating in all treatment planning sessions and required individual therapy sessions; and maintaining transparency with staff, among other things. According to the report, Rich attended 3 of his 6 scheduled individual therapy sessions: 3 of 4 boundaries and relationships groups: 6 of 6 desistance groups: 4 of 6 "Facing the Shadow" groups; 4 of 7 high risk process groups; 1 of 1 internal and external coping skills groups; 6 of 10 moral reasoning groups; 0 of 4 relapse prevention groups; 1 of 4 relationship skills groups; 7 of 23 treatment resistant groups,; and 11 of his 12 scheduled comprehensive integrated treatment plan meetings in the prior year.

Rich's primary therapist reported that Rich stated he "does not intend to engage in the treatment program any longer because he has already completed it several times." The therapist reported that Rich failed to submit his required rational self-analyses (RSAs), fantasy logs, and relapse-prevention plan and that Rich did not take any polygraphs during the past year. The report also states that Rich was placed on security-risk status in March 2023 for refusing to have his photo ID picture updated, that Rich received a

3

written notification in February 2023 and May 2023 for verbal aggression toward staff, and that Rich received a written notification in May 2023 for refusing submit to a metal detector after going to the yard. Rich's therapist reported that Rich "expressed no desire to advance in treatment, and he limits his participation in the program to individual sessions, physical exercise in gym and yard, and CITP meetings."

Licensed evaluators, including Rich's primary therapist and a clinical psychologist, scored three actuarial risk assessments—the Static-99R, a STABLE-2007, and an ACUTE-2007—designed to measure changes in treatment need, risk status, and likelihood of recidivism. The Static-99R estimates the probability that a convicted adult male offender will reoffend against a child or nonconsenting adult. Rich scored a "+3" on the Static-99R, placing him in the "average" risk category. The STABLE-2007 assesses change in intermediate-term risk status and treatment needs and helps to predict recidivism in sexual offenders. Rich scored 11 out of a possible 26 points on the test, putting him at a "moderate level of criminogenic needs." Rich's 2023 examination report identifies the following need areas of clinically significant concern: significant social influences, capacity for relationship stability, lack of concern for others, impulsive acts, poor problem-solving skills, negative emotionality, deviant sexual interest, and cooperation with supervision.

The report also states that when the Static-99R and STABLE-2007 risk assessments were combined to form a composite assessment, it indicated Rich was expected to have "roughly the same rate of recidivism compared to the average individual convicted of a sexually motivated offense." Finally, the ACUTE-2007 assessed current treatment needs and noted that Rich "exhibited clinically significant problems related to hostility and rejection of supervision." Though a numerical score is not provided, the report suggests that Rich's ACUTE-2007 score is within the expected range for adult males in the Static-99R and STABLE-2007 standardized risk profile of "average." The 2023 report explains that these risk-assessment instruments assess the likelihood that an

4

offender will be apprehended for a new sexual offense within a specified time frame rather than at any point in the offender's life span. Accordingly, the report cautions that these risk-assessment instruments may "underestimate the degree of recidivism" over the offender's remaining lifetime.

An examiner also reviewed the 2022 identified areas of risk with Rich, which included hostility, sexual preoccupation, and rejection of supervision. When asked what steps he had taken to address those risks in the past year, Rich responded:

> "Can you read my mind!? How do you know I have sexual preoccupation at all? I've never spoken anything or have anything in my mind that would tell you that. As far as supervision, I'm a grown adult, what do I have to be supervised for!? I'm a grown man, I don't need someone standing over my shoulder."

The examiner who interviewed Rich on August 25, 2023, noted that while Rich was cooperative, spontaneously verbal, and alert, he also presented an agitated mood and constricted affect. In the interview, Rich reported he maintained positive and encouraging friendships with his peers, read spiritual materials and novels, and wrote sermons from time to time. Rich further stated he prayed and looked to religion to help manage intense emotions. Rich also "frequently expressed complaints about SPTP and had to be redirected" during the interview. When asked to describe his mood, Rich stated, "Good. It's better since I resigned [from engaging in the program] and stepped out of it." Rich denied having symptoms of anxiety and stated, "No, they have the anxiety, I don't," evidently referring to the SPTP administration. Rich also denied any issues impacting his sexual functioning at the time of the assessment.

The examiner noted that Rich "appeared capable of reflective insight into his behaviors," but when asked about the behaviors that placed him in SPTP, Rich responded (regarding his offense against 13- and 14-year-old boys), "[I]t wasn't me, I never

5

initiated. I'm not blaming the victim; he just was doing something he saw on TV or wanted money." When asked about the reason for his convictions of aggravated indecent solicitation and lewd and lascivious behavior in 1986, Rich stated, "You know, he was approaching me in that way. I would never initiate something with someone that would never happen. . . . If it's something that's not a good thing to do before God, you're going to get a big 'no.'" The report continues: "When asked his understanding of the diagnosis of Pedophilic Disorder, [Rich] stated, 'It's gone. I don't have that no more.'" Rich also denied a history of voyeuristic, zoophilic, and exhibitionistic acts that led to the diagnoses of his other specified disorders. Finally, Rich told the interviewer that he is currently resigned from the program and is not participating in it.

The examination report states that Rich's anticipated treatment for the next year would focus on Rich's work to reduce his treatment needs and associated risk as identified in the risk-assessment tests. Those areas of focus include Rich's "hostility, rejection of/cooperation with supervision, significant social influences, capacity for relationship stability, lack of concern for others, impulsive acts, poor problem solving, negative emotionality, and deviant sexual interest."

The 2023 examination report concludes that Rich remains a sexually violent predator. According to the report, Rich continues to meet the definition of a person convicted of a sexually violent offense and suffers "from a mental abnormality or personality disorder which makes it likely he will engage in repeated acts of sexual violence." The report concludes that Rich continues to suffer from pedophilic disorder, exhibitionistic disorder, bipolar I disorder, and a personality disorder with antisocial features. However, after a review of Rich's file, the examiner determined that the previously reported diagnoses of voyeuristic disorder and zoophilia were based on limited information insufficient to justify continuation of those diagnoses, and thus they were removed from the 2023 report. The report also states the risk associated with Rich's conditions "has not so significantly changed that it would be safe for Mr. Rich to be

6

placed in Transitional Release, as it is likely he may engage in repeat acts of sexual violence if placement was to occur at this time."

On September 28, 2023, Rich petitioned for an annual review hearing and a motion for an independent examination, which the State opposed. On November 6, 2023, the district court held a hearing where Rich's attorney argued that Rich was "doing a bit better" but "still not 100 percent participating in the program." Rich's attorney stated that Rich refused to participate for the last several years because the program continued "rinsing and repeating the courses, giving them different names, and going from levels to tiers, changing the verbiage, but not changing the substance of the treatment." According to Rich's attorney, there was good cause to appoint an expert for an independent examination because they were "operating under an evaluation that is 20 years old," and "the hospital has just been going on their old records, because he hasn't given them anything else."

The district court agreed with the State that Rich failed to participate fully in his annual examination and stated, "I'm not sure why we would expect [Rich] to be participatory in an independent evaluation, or at least to the point that we would get an honest evaluation." The district court found Rich's failure to participate in the treatment program was not excused by his argument that he had been through it before because it was "not a question of pass-fail" but rather a "question of continuing treatment until [Rich] reaches that standard" of promotion in the program. The district court declined to order an independent examination, finding that it would not be of any benefit to the court in its determination.

After the denial of the independent examination, Rich's attorney requested that the district court schedule a separate annual hearing to determine whether probable cause existed to justify an evidentiary hearing on Rich's potential transitional release. She requested Rich's presence via Zoom but acknowledged that Rich was not entitled to be

7

present or to have a separate hearing. The district court denied the request, noting improvement in Rich's annual report but finding no probable cause that his disorder had changed enough to justify an evidentiary hearing on the question of moving to transitional release. In its journal entry, the district court explained it denied Rich's request to appoint an independent examiner because Rich "has not been compliant with institutional requirements as he is not fully engaged in treatment." The district court further determined that Rich's "lack of engagement and participation in treatment is such that he is presumed to be unable to show probable cause he is safe to be released and there is no evidence to rebut this presumption." The district court stated there was "not good cause to appoint an independent examiner nor is there probable cause to believe that [Rich's] mental abnormality or personality disorder has significantly changed that he is safe to be placed in transitional release."

Rich timely appealed.

## DISCUSSION

On appeal, Rich argues the district court erred when it denied his request for appointment of an independent examiner and found that Rich failed to show probable cause that he is safe to be placed into transitional release. He specifically argues that the district court abused its discretion by not appointing an independent examiner because he demonstrated improvement and compliance. Rich asserts that he met his burden to demonstrate he was fit for transitional release because he had participated in 20 years of treatment and "received the maximum benefit from it long ago."

The KSVPA was enacted to provide the long-term care, treatment, and control of persons identified as sexually violent predators. *In re Care & Treatment of Burch*, 296 Kan. 215, 219, 291 P.3d 78 (2012). Once a person is found to be a sexually violent predator under the KSVPA, the person is civilly committed "until such time as the

8

person's mental abnormality or personality disorder has so changed that the person is safe to be at large." K.S.A. 2023 Supp. 59-29a07(a). During the commitment, the person receives treatment in a program designed for sexually violent predators comprised of steps or phases designed to treat the offender's condition and move them toward increased independence. The last phase is transitional release, where the committed person remains in custody but lives independently under State supervision. K.S.A. 2023 59-29a08(i); see also *Burch*, 296 Kan. at 220 (explaining the treatment phases and transitional release).

As part of the treatment process, a committed person in the SPTP receives annual examinations of their mental condition to determine whether they are appropriate to move to the next phase of the program. K.S.A. 2023 Supp. 59-29a08(a). After receiving the KDADS report and its recommendation regarding transitional release, the committed person may request an annual review hearing and petition for transitional release to the district court. K.S.A. 2023 Supp. 59-29a08(b).

I.      THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING RICH'S
        REQUEST FOR AN INDEPENDENT EXAMINER

As part of a committed person's annual review hearing, they may either retain or—if indigent—request appointment of an independent examiner to evaluate their condition and thus their appropriateness for transitional release. The KSVPA provides that the retained or appointed independent examiner "shall have access to all available records concerning the person." K.S.A. 2023 Supp. 59-29a08(c). However, the district court is not required to appoint an independent examiner—"the court shall determine whether the services are necessary and . . . before appointing an examiner, shall consider factors including the person's compliance with institutional requirements and the person's participation in treatment to determine whether the person's progress justifies the cost of an examination." K.S.A. 2023 Supp. 59-29a08(c). The district court must set an

9

evidentiary hearing if the committed person meets their burden to demonstrate probable cause to believe their mental abnormality or personality disorder has significantly changed so that they are safe to be placed in transitional release. K.S.A. 2023 Supp. 59-29a08(d).

Accordingly, appellate courts review the district court's discretionary decision to appoint or deny an independent examiner for an abuse of discretion. *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 310, 263 P.3d 199 (2011); see also *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 (2007) (appellate courts review discretionary decisions made by trial courts for an abuse of discretion). A judicial action constitutes an abuse of discretion if it is based on an error of law or fact, or is arbitrary, fanciful, or unreasonable. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022). As the party asserting error, Rich carries the burden to show the district court abused its discretion. See *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

Rich argues the district court erred in denying his request for an independent examiner because he demonstrated improvement by participating in the interview portion of his 2023 annual review—something he had not done since 2019. He also emphasizes his attendance at 3 individual therapy sessions, 132 open leisure sessions, and his high attendance in various required group meetings. Rich also points out that his previous diagnoses of "Voyeuristic Disorder and Other Specified Paraphilic Disorder (zoophilia)" were removed in his 2023 examination report. Rich reiterates the argument his counsel made to the district court:  Rich has spent 20 years in the program and it "would be a good time to get some outside eyes to talk with [him] and determine if [the sexually violent predator determination] is still a good diagnosis."

Rich has failed to demonstrate measurable progress, especially given the many areas in which he rejects the program entirely. Moreover, Rich's participation in treatment has been irregular, and he demonstrates insufficient effort to make progress in

the SPTP. Despite having been in the program for 20 years, Rich remains on the lowest program level—Tier 1 of inpatient treatment. Rich also violated program rules in 2023, causing him to be put on security-risk status and reprimanded for verbal aggression toward staff. The most recent examiner removed Rich's diagnoses of voyeurism and zoophilia because they were based on a dated psychological evaluation and there was "insufficient to justify the continuation of the diagnosis," but Rich disputes no other findings from the original evaluation in 2003. The original evaluation is aged, but Rich cites no evidence—not even his own actions—that undermine its original or continuing accuracy. In fact, Rich's annual examination reports appear to support the original evaluation.

According to the 2023 annual examination report, Rich refused to participate in multiple portions of his treatment, including his annual interviews from 2019 to 2022; his required fantasy logs, self-analyses, and relapse prevention plans; and group programs and therapy sessions. Rich also expresses resistance to treatment because he believes he has "already completed it several times." Rich's psychoeducation counselor stated that "Mr. Rich has some insight . . . but is easily distracted by discussion of the program." Rich opposes SPTP supervision, challenging the idea that he should supervised at all and asking in the interview, "'As far as supervision, I'm a grown adult, what do I have to be supervised for!?'"

The district court denied Rich's request for an independent examiner because Rich demonstrated no progress in the program, failed to comply with its requirements, and exhibited resistance to treatment. The KSVPA identifies progress in and compliance with the program as appropriate factors for the district court's consideration in determining whether to appoint an independent examiner. K.S.A. 2023 Supp. 59-29a08(c). The district court's findings that Rich failed to participate in treatment and comply with program requirements are amply supported by the record. Given these facts, this court

11

cannot say that the district court's decision was an abuse of its discretion as there is no error of law or fact, and its decision is not unreasonable.

II.     THE DISTRICT COURT DID NOT ERR IN DENYING RICH'S PETITION FOR TRANSITIONAL RELEASE

The KSVPA permits committed individuals to petition the district court for conditional release over KDAD's objection. K.S.A. 2023 Supp. 59-29a08(b). If the committed person is able "to show probable cause to believe the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release," the court must set a "hearing for transitional release on the issue." K.S.A. 2023 Supp 59-29a08(d), (g); *Burch*, 296 Kan. at 221. Here, because Rich sought transitional release under 59-29a08(b), he had the burden of showing probable cause to believe his mental condition had significantly changed so that he was safe to be placed in transitional release at the annual review hearing. K.S.A. 2023 Supp. 59-29a08(d); see 296 Kan. at 222. Under the KSVPA, probable cause to justify conditional release is facts "sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the person's mental abnormality or personality disorder has so changed that he or she is safe to be placed in transitional release." 296 Kan. 215, Syl. ¶ 7.

This court applies a de novo standard of review to an appeal from the district court's probable cause determination following an annual review hearing. *Burch*, 296 Kan. at 222-23. On appellate review, the court draws inferences from the evidence presented and resolves all conflicting evidence in the most favorable light to the committed person. 296 Kan. 215, Syl. ¶¶ 8, 9.

Rich essentially argues that his 20 years of program participation means that he has completed all of it and "received the maximum benefit long ago." Rich emphasizes

12

his participation in the interview portion of his annual examination for the first time since 2019. Rich highlights that in the past year he attended 3 individual therapy sessions, 132 open leisure sessions, 11 of 12 CITP meetings, and other group meetings. Finally, Rich argues there is evidence that his actuarial test results have fallen steadily so that he is "now considered to be only of average risk."

The KSVPA requires more than occasional, leisurely participation and a reluctant willingness to engage in the annual interview. Such lackluster participation is unlikely to allow a committed person to demonstrate the required significant change in their mental abnormality or personality disorder. In fact, "[i]f the person does not participate in the prescribed treatment plan, the person is presumed to be unable to show probable cause to believe the person is safe to be released." K.S.A. 2023 Supp. 59-29a08(d). Rich does not argue that his scant participation overcomes this presumption. Last year, a panel of this court found Rich triggered the presumption by refusing to participate in the interview portion of the annual examination since 2019, refusing to complete group treatment, attending only 71% of individual treatment sessions, resisting or rejecting treatments discussed, declining to work in the program, failing to submit his RSAs or fantasy logs, and failing to undergo a polygraph test. *In re Care and Treatment of Rich*, No. 126,123, 2023 WL 7404344, at *3-4 (Kan. App. 2023) (unpublished opinion).

Once again, Rich's 2023 annual report shows that he failed to attend many individual and group sessions. Moreover, Rich still refuses to submit his required RSAs, fantasy logs, or a relapse prevention plan and has not taken any polygraphs during the past year. According toRich's therapist, Rich "expressed no desire to advance in treatment, and he limits his participation in the program to individual sessions, physical exercise in gym and yard, and CITP meetings." While Rich participated in the interview portion of his evaluation in 2023, he devoted much of the time to criticizing the program and resigning himself to stagnation in Tier 1.

13

Another statutory presumption weighs against Rich's demonstration of probable cause warranting a hearing because he filed a previous petition for transitional release that was denied. When that occurs, the court "shall deny the subsequent petition, unless the petition contains facts upon which a court could find the condition of the petitioner had significantly changed so that a hearing was warranted." K.S.A. 2023 Supp. 59-29a11(a). The district court did not rely on this presumption, nor did the State raise the presumption in its appellate brief. Despite acknowledging the presumption in his brief, Rich fails to identify facts upon which a court could find a significant change in his condition.

After 20 years in the program, Rich has not demonstrated any significant progress. While Rich's 2023 annual evaluation resulted in the removal of two of his psychiatric diagnoses, the same evaluation found Rich remains a sexually violent predator who poses a danger to society. Rich continues to participate only in those parts of the program he considers worthwhile, struggles to understand the purpose of his supervision, and minimizes his accountability and responsibility for his crimes. Rich's repetition of the SPTP material does not establish probable cause warranting an evidentiary hearing on his request for transitional release. Rather, Rich must demonstrate significant change in his personality disorder or mental abnormality. Rich failed to meet his burden.

CONCLUSION

The district court considered the relevant evidence and denied Rich's request for an independent examiner based on his lack of compliance with and commitment to the SPTP. Rich points to no error of law or fact in the court's decision, and this court cannot say the court's denial was unreasonable. The court did not abuse it discretion when it denied Rich's request for an independent examiner.

14

Additionally, the district court did not err when it denied Rich's petition for transitional release. Under the KSVPA, a person who fails to participate in the prescribed treatment plan—such as Rich—"is presumed to be unable to show probable cause to believe" they are safe for transitional release. K.S.A. 2023 Supp. 59-29a08(d). Under these circumstances, even when viewed in a most favorable light to Rich, the evidence would not cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that Rich's mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release. The district court's judgment is affirmed.

Affirmed.