NOT DESIGNATED FOR PUBLICATION

No. 129,057

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
LINDON ALLEN.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ROBB RUMSEY, judge. Submitted without oral argument. Opinion filed June 5, 2026. Affirmed.

*Jakob C. Ladanyi,* of Wichita, for appellant.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., HILL and BRUNS, JJ.

HILL, J.:  Lindon A. Allen, a sexually violent predator receiving State treatment, appeals a district court's denial of his petition for appointment of an independent examiner and for his transitional release from his commitment under the Sexually Violent Predator Act. We have searched the record and find no abuse of discretion in the district court's denial of Allen's request for an independent examiner. Simply put, Allen has failed to show good reason for such an examination. We agree with the lower court that Allen has failed to meet his burden to show probable cause that his mental condition had changed so much that it would be safe to place him on transitional release. Thus, we affirm.

*Some background information provides context for our decision.*

Allen has significant history as a sexual predator. In 2010, Allen stipulated that he was a sexually violent predator, and the district court ordered his commitment to the custody of the Secretary of Social and Rehabilitation Services and his placement in the sexual predator treatment program at Larned State Hospital. The commitment followed Allen's conviction for aggravated indecent liberties with a child involving his four-year-old daughter while sitting on his lap. He also had prior convictions for sexual battery involving a bus driver and aggravated incest involving his sister. Allen admitted he had paid his brother to perform oral sex on him at least five times.

The sexual predator treatment program consists of three inpatient tiers and two levels of supervised outpatient treatment—transitional release and conditional release. In August 2019, Allen advanced to tier three and was transferred to a reintegration facility. But in April 2021, Allen slid back to tier one at Larned after getting caught with an unapproved smartphone with unapproved internet access. On the phone, he had accessed a dating site and searched for pornography using search terms dealing with preteens. Allen denied this. His photo gallery included a picture of what appeared to be a minor female in a swimsuit.

Under the statute, K.S.A. 59-29a08(a), Allen was subject to annual reviews of his mental condition. Each year, the clinicians concluded Allen's mental abnormality or personality disorder remained unchanged. Following the 2021 report, Allen petitioned the district court for the appointment of an independent examiner and a hearing on whether he was safe to be placed in transitional release. The district court found no probable cause to believe Allen's mental abnormality or personality disorder had changed so much that he was safe to be placed in transitional release, noting his return from the tier three reintegration facility for unapproved cell phone usage and that his actuarial scores were above average.

2

In October 2024, Allen underwent the annual review that is the subject of this appeal. At that time, he had progressed to tier two. Tier two begins moving from a structured inpatient environment toward an independent lifestyle. The residents are reintroduced to the real world through a series of escorted outings. Residents must demonstrate the ability to make appropriate decisions. In addition, residents must participate in therapy, complete a relapse prevention plan, take polygraphs, and take educational classes. Residents must be successful on tier two to advance to tier three. Tier three involves more independence. Residents must, among other requirements, find employment, use their own transportation, pay rent and bills, purchase food, and care for their personal needs all while continuing therapy and managing risk factors.

The annual examination found that Allen remained a sexually violent predator and that he was not safe to be placed in transitional release. Allen was again diagnosed with pedophilic disorder, antisocial personality disorder, and post-traumatic stress disorder. Allen was participating in assigned classes and groups. He had been observed taking accountability for the reasons he returned to tier one. For the most part, Allen regularly submitted his rational self-analysis reports and fantasy logs, as required. His recent polygraphs suggested no significant reaction or disclosures. He had an approved relapse prevention plan. He was beginning off campus outings at the time of the report. He was employed in the vocational training program working 14 to 16 hours a week. Though, he had been recently reprimanded for possession of contraband (a soda crate).

Allen was evaluated using several actuarial risk assessments, including the Static-99R, the STABLE-2007, and the ACUTE-2007. The Static-99R is an actuarial instrument that estimates the probability the sex offender will reoffend. Allen scored in the average risk category, or higher than about 57% of sex offenders. The STABLE-2007 is an actuarial instrument used to assess change in intermediate-term risk status, assess treatment needs, and help predict recidivism. Allen scored a 10 out of 26, suggesting a moderate level of criminogenic needs. The ACUTE-2007 is a risk assessment instrument

3

that measures factors that change very rapidly in an inpatient setting. He scored average. Allen was also evaluated using the MoCA-BLIND, a rapid screening instrument used to detect mild cognitive dysfunction. Allen scored 22 out of 22 points, suggesting no clear impairment in cognitive function.

In Allen's interview he reported continued trauma due to a major car accident in July 2020. When asked about his conviction for aggravated indecent liberties with a child, Allen merely admitted he had touched his daughter once or twice. He would not take responsibility at all for his sexual battery conviction. As for the cell phone, he acknowledged viewing pornography, but denied viewing pornography of people under the age of 18. He admitted he had a problem with impulsive behavior, such as looking at pornography.

The report stated that Allen needed treatment regarding his significant social influences, capacity for relationship stability, general social rejection, lack of concern for others, impulsivity, sex as coping, deviant sexual interest, and cooperation with supervision. Allen needed to identify how he was managing those areas of risk. He also needed to create a plan for safe use of the internet. In October 2024, Allen petitioned the district court for appointment of an independent examiner and for a formal annual review hearing to determine whether probable cause existed to believe he was safe to be placed in transitional release. At the hearing on the petition, Allen was represented by counsel. Allen's counsel argued that Allen was different than other committed persons because he had progressed to tier three but had "somehow" got bumped back and that Allen was now working the program.

The district court denied both petitions, after finding that the motions were premature. Allen was only on tier two and needed to succeed on tier three of the program where he "failed so poorly" before.

4

*We find no abuse of discretion in the refusal to appoint an independent examiner.*

On appeal, Allen contends the district court abused its discretion when it refused to appoint an independent examiner. K.S.A. 59-29a08(c) says that the district court may appoint an examiner if a committed person is indigent and so requests. When considering such request, the court "shall determine whether the services are necessary" considering "factors including the person's compliance with institutional requirements and the person's participation in treatment to determine whether the person's progress justifies the costs of an examination." District courts have discretion to determine whether to appoint an independent examiner for an annual review hearing according to K.S.A. 59-29a08(c).

We review a district court's decision on whether to appoint an independent examiner at the annual review stage for abuse of discretion. *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 310, 263 P.3d 199 (2011). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024).

Allen argues the district court acted arbitrarily because it did not make any findings in denying his request for an independent examiner. The State argues the district court did make sufficient findings. The district court found Allen was on tier two, had "failed so poorly" last time he was on tier three, and needed to succeed on tier three before being placed on transitional release.

The district court's finding was logical, not arbitrary. Allen was in tier two of a three-tier program. Nor did Allen comply with institutional requirements when he was previously on tier three. Basically, he needed to succeed on tier three before moving to transitional release. Therefore, his limited progress did not justify the cost of an

5

examination. See K.S.A. 59-29a08(c). Similar reasoning was upheld in *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d at 311.

Allen also argues it was unreasonable for the district court to rely on the State's evaluation because the evaluation does not explain the reason for its conclusion. In his view, the evaluation is just raw data, actuarial and psychological assessment results, and a conclusion. In response, the State argues the annual report is an 11-page explanation of the facts that led to its conclusion that Allen's mental abnormality or personality disorder had not so changed.

We agree with the State that the report is adequate. A reasonable person could conclude that although Allen was participating in treatment, his progress was not sufficient to justify appointment of an independent examiner.

*We see no probable cause that Allen had significantly changed.*

Allen also argues there was probable cause that his mental disease or personality disorder had changed such that it was safe for him to be placed in transitional release.

A person committed under the Sexually Violent Predator Act must have an annual review of the person's mental condition. K.S.A. 59-29a08(a). If the person challenges the annual review, the district court then holds a hearing to determine whether the person has shown probable cause to believe the person's mental condition has "significantly changed" so they are safe to be placed in transitional release. K.S.A. 59-29a08(b), (d). If the person establishes probable cause, then the district court will hold a transitional-release hearing where the burden is on the State to show, beyond a reasonable doubt, that the person still meets the criteria justifying initial commitment. K.S.A. 59-29a08(g); *In re Care and Treatment of Quillen*, 312 Kan. 841, 851-52, 858, 481 P.3d 791 (2021).

6

We apply a de novo standard of review to a district court's decision at an annual review hearing on whether probable cause existed to believe the person's mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release. Probable cause in this context means facts "sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief" that the person's mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release. *In re Care & Treatment of Burch*, 296 Kan. 215, 223, 226, 291 P.3d 78 (2012).

Because a committed person bears the burden of proof at an annual review hearing to show probable cause to believe the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release, appellate courts must consider the evidence in the light most favorable to the committed person, drawing inferences and resolving conflicting evidence in that person's favor when reviewing a probable-cause determination. K.S.A. 59-29a08(d); *In re Care & Treatment of Burch*, 296 Kan. 215, Syl. ¶ 9.

Allen argues there was sufficient probable cause because he suffered a psychological change due to a traumatic car accident. He also argues he showed improvement on the MoCA-BLIND psychological test. The State argues the diagnoses that led to Allen's commitment have not changed; there were several steps Allen needed to complete before even moving to tier three; Allen did not take responsibility for searching for child pornography on his contraband phone; the actuarial risk assessments continue to show he is at average risk of reoffending; he needed to work on impulse control; he did not take responsibility for all of his criminal history; and he claims to have never been attracted to minors.

After our review, we agree with the district court that Allen did not show probable cause. He has not explained how the traumatic car accident changed his mental

abnormality or personality disorder. Allen bases his probable cause argument on his 2024 evaluation, which recommended no change in his status. In the light most favorable to Allen, the annual report does not support probable cause. While Allen was participating in therapy and other classes, he remained diagnosed with pedophilic disorder. He remained at an average risk of reoffending. He had not completed tier two of the program and had failed tier three previously. He needed to show that he could complete tier three of the inpatient program before being placed in transitional release.

In his interview, Allen would not take full responsibility for his prior convictions. Rather, he downplayed his abuse of his daughter and flat out would not take responsibility for the sexual battery. He denied that he searched for child pornography on his cell phone. The report stated that Allen needed to deal with his impulsiveness, lack of concern for others, using sex as coping, deviant sexual interest, and cooperation with supervision. And Allen needed a plan for safe use of the internet. Given these facts, a person of ordinary prudence and action could not conscientiously entertain a reasonable belief that Allen's mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release.

Affirmed.